## BRADLEY v. BLAKELY.
### No. 4774.

Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

See, also (La. App.) 147 So. 709.

W. Decker Moore, of West Monroe, for appellant.

Jesse S. Heard, of Monroe, for appellee.

DREW, Judge.

Plaintiff sued for compensation at the rate of $5.85 per week for a period of 100 weeks, for the loss of his left eye. He alleged that he was employed by defendant to cut pulp wood at an agreed price of 75 cents per cord, and while he was performing his duties under said employment and was in the act of cutting pulp wood, that a chip was thrown up by the axe and struck him in the left eye, causing total blindness, and later the eye had to be removed. He alleged that the employment was one that came under the purview of the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914, as amended), and that the defendant's trade, occupation, and business was that of cutting and manufacturing pulp wood in Ouachita parish, La.

An exception of no cause of action was filed by the defendant and sustained by the lower court. On appeal, this court reversed the ruling of the lower court and remanded the case to be tried on its merits. It was then tried below on its merits, resulting in a judgment for plaintiff in the amounts of $190.50 for sanitarium and doctor's bills, and the further sum of $2.60 per week for a period of 100 weeks for the loss of an eye. Defendant has appealed to this court.

The judgment of the lower court is erroneous in awarding $2.60 per week compensation as the minimum amount that can be awarded under the Compensation Law of this state is $3 per week. However, it is useless to discuss this feature due to our finding in the case.

The defenses set up are:

(1) That the trade, business, and occupation of the defendant is that of farming, which is nonhazardous and is not covered by the Workmen's Compensation Act of Louisiana.

(2) That cutting pulp wood is a nonhazardous occupation.

(3) That plaintiff was an independent contractor.

(4) That the loss of his eye was not due to any accident occurring while he was in the employ of defendant.

The record discloses that defendant is a farmer by occupation and has followed this occupation all his life. He owned two hundred acres of land on which he lived and farmed. From that part of the land which he did not till, and commonly called "woodland," he had sold all the merchantable sawmill timber, which had been removed some years prior to the date of the alleged accident; and all the timber remaining on the wooded land was small and fit for use only for pulp wood or firewood.

Prior to the trial of this case below, defendant had hired cut and sold the following quan-

tities of pulp wood from his land: 5 cords at one time; 3 cords at one time; and 50 cords at another time. It was during the time he was having cut the 50 cords that plaintiff claims to have been injured. All the pulp wood sold by defendant was from his own land. He did not buy timber from others, have it cut, and then sell it. He testified that he might have to sell more pulp wood in the future due to crop failures.

Practically all farms in this section of the state have some wooded land on them. Many farmers cut or have cut firewood and stovewood from this wooded land and sell it, thereby receiving cash to assist in running the farm and to buy groceries and other necessities of life. Since the paper mills have come into this section of the state and natural gas is used in most cities, towns, and villages, a great many of our farmers have been deprived of this small means of revenue, and in its place have, in a great many instances, sold the wood that would have been used for firewood and stovewood to the pulp mills. The fact that they sell a small quantity of pulp wood does not, by any means, change their occupation from one of farming to one of pulp wood manufacturer or contractor. Neither does it constitute a double occupation of farming and manufacturing pulp wood. The defendant herein sold only a small quantity of pulp wood and it was not a principal occupation and business of defendant and not in the course of his trade. If we should hold that a farmer who sells a small quantity of pulp wood from his farm is engaged in the occupation and business of a pulp wood contractor or manufacturer and subject to the Compensation Law of Louisiana, we would likewise have to hold that every farmer who cuts firewood and stovewood and sells it is also subject to the Compensation Law of this state.

Before wooded land can be put into cultivation, the trees have to be cut down and removed, and what is the difference, whether they are burned or cut into pulp wood and sold? We think there is none so far as the Compensation Law of this state is concerned. We can imagine cases where a farmer could be held under the Compensation Law for cutting timber into pulp wood and selling it, for instance, where he went into the business in a big way, or where he bought timber from others and converted it into pulp wood for sale, or where the pulp wood business was his principal business and farming was a minor part of his business. We have no such case here. The record is clear that defendant relies upon his farm for his livelihood, and the sale of pulp wood is a very small part of his business. All the wood sold was cut off his farm, and during his entire life he had made only three sales of pulp wood.

In Brockett v. Mietz, 184 App. Div. 342, 171 N. Y. S. 412, the court said: "It was in the winter time; defendant and two or three men were getting out logs on his farm, and merely because he was going to sell the lumber we think did not take it out of what is generally understood to be farm labor."

In Hagelstad v. Usiak (Minn.) 252 N. W. 430 (January, 1934), the court denied compensation under the following statement of facts:

A farmer owned 66 acres of land, part of which bordered on a lake. Only 10 or 12 of these acres were under cultivation. He raised turkeys and chickens. The house and buildings on this farm were erected from timber on the farm. He had a sawmill, but no sawing was done for others. Occasionally he sold some lumber when not needed. He had erected two summer cabins on the shore of the lake and rented 14 boats to fishermen. He also had a small building where he sold soft drinks. This farmer engaged the claimant to cut some cordwood on his own land for his own use, but after a small amount had been cut, he found it could not be hauled out. The farmer thereupon bought some timber stumpage from the land of a power company, and hired the claimant to cut that stumpage. In all, 109 cords of wood were cut when the claimant was injured. The farmer needed only 30 cords for his own use, and the balance the farmer sold to his son to pay for money he had borrowed. The cutting of this cordwood by the claimant, under the facts of the instant case, was held to be casual and incidental to farming; hence an award of compensation to the claimant was denied.

We therefore find that the first defense set up by defendant is well founded, and it is unnecessary to pass upon the other defenses. The judgment of the lower court is incorrect and will have to be reversed.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court is reversed, and the demands of plaintiff are now rejected.