(No. 6461. May 24, 1938.)

GLENN I. MUNDELL, Appellant, v. C. A. SWEDLUND, Respondent.

[80 Pac. (2d) 13.]

30

E. B. Smith and Dale Clemons, for Appellant.

Earl E. Garrity, for Respondent.

BUDGE, J.—Glenn I. Mundell, appellant, employed by respondent Swedlund, while assisting in the work of commercially grinding hay for one Haynes, a customer of respondent, and more specifically while hammering a steel stake to which was attached a guy wire holding the derrick used in such operations, was struck in the right eye with a small piece of metal flying from the stake, the eyeball being pierced and entirely destroyed, removed by operation, and an artificial eye fitted. Respondent in his business ground hay commercially at an agreed price per ton with a hammer mill which was moved from place to place with a crew of men. Respondent was not a farmer, did not cultivate nor prepare the soil, plant the seeds, raise or harvest crops, nor rear, feed, or manage livestock and had nothing to do with tillage, husbandry or farming, but supervised his crews and machines for grinding during season, and attended a garage and service station business the balance of the time. The

Industrial Accident Board found appellant was injured on account of a personal injury by accident arising out of and in the course of his employment by respondent, but denied an award of compensation to appellant, finding that at the time appellant sustained injury by accident, *respondent had not elected in writing filed with the Industrial Accident Board, that the provisions of the Workmen's Compensation Law should apply to the agricultural pursuits carried on by him.* This appeal was taken from the award of the board, denying compensation.

Appellant urges by his three assignments of error that the board erred in failing to enter an award in his favor for the benefits provided by the Workmen's Compensation Law. One question only is presented: Was respondent engaged in an agricultural pursuit within the meaning of section 43–904, I. C. A., providing:

"None of the provisions of this act shall apply to:

"1. Agricultural pursuits. . . . .

"Unless prior to the accident for which the claim is made, the employer had elected in writing filed with the board, that the provisions of the act shall apply."

Respondent relies almost entirely upon *Cook v. Massey,* 38 Ida. 264, 220 Pac. 1088, 35 A. L. R. 200, urging that this court there settled the workmen's compensation laws and clarified the rules for determining cases containing questions such as here presented, determining "threshing" to be an agricultural pursuit.

*Cook v. Massey, supra,* does not appear to be analogous to, nor is it controlling in, the instant case. The case is bottomed upon the propositions that there is authority that an employee *upon a threshing machine* is following an agricultural pursuit, and that the legislature strongly indicated its intention to, and classified threshing as an agricultural pursuit by the express provisions of an amendment to section 44–301, I. C. A., providing:

"Any person who does any labor on a farm or land in tilling the same, or in cultivating, harvesting, threshing, or housing any crop or crops raised thereon, has a lien on such crop or crops for such labor. . . . . "

In other words it was determined that the legislative intent had been indicated, and would be followed, that the occupation of *threshing* is an agricultural pursuit. In summarizing the case the following language appears in the opinion in *Cook v. Massey, supra*:

"As we have indicated above, this is a question solely of legislative intent, and since there is authority supporting the proposition *that an employee upon a threshing machine is following an agricultural pursuit, and our own legislature has indicated very strongly that they have classified threshing as an agricultural pursuit, that indication will be followed.*" (Emphasis inserted.)

It does not appear that the milling or grinding of hay or the operation of a hammer mill for grinding is analogous to threshing, or that a hammer mill and a threshing machine are analogous or alike. In *Cook v. Massey, supra,* the following definition of a threshing machine is given:

" 'Threshing machine' is defined in 38 Cyc. 301 as follows: 'In agriculture, a stream, water, or horse power machine which in its most complete form beats the grain from the ears of cereals, separates the grain from the straw, and winnows it from the chaff.' "

The court further, in *Cook v. Massey, supra,* recognizes a distinction between "milling" and "threshing," saying:

" . . . . It is urged that *milling* and *threshing* are similar businesses and employments, both dealing with the product of the farm, and that milling is clearly not an agricultural employment. The fallacy of this reasoning is that grain is a farm or agricultural product, which flour, *the product of the mill*, is not." (Emphasis inserted.)

The definition of "grind" is given in Funk & Wagnall's Standard Dictionary, as follows:

"To reduce to fine particles or powder by crushing and friction; triturate; as, to grind wheat. To produce by trituration or by rotary motion like that of a mill; as, to grind meal;"

*Dorrell v. Norida Land & Timber Co.*, 53 Ida. 793, 27 Pac. (2d) 960, is authority for the proposition that in determining whether the injured party was, or was not, employed in an agricultural pursuit, at the time of the accident,

section 43–904, I. C. A., as well as the Workmen's Compensation Law, and all proceedings under it must be liberally construed with a view to effect the object of the law and to promote justice. (*Flynn v. Carson,* 42 Ida. 141, 152, 243 Pac. 818; *McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, 203 Pac. 1068; *Hustead v. H. E. Brown Timber Co.,* 52 Ida. 590, 17 Pac. (2d) 927.) The following definitions of "agriculture" and "pursuit" appear in *Dorrell v. Norida Land & Timber Co., supra:*

"The term 'agriculture' is defined in 2 C. J. 988, as follows: 'The art or science of cultivating the ground, especially in fields or large quantities, including the preparation of the soil, the planting of seeds, the raising and harvesting of crops, and the rearing, feeding and management of livestock; tillage, husbandry and farming.' . . . . 'pursuit' is defined by Funk & Wagnall's Standard Dictionary (1921 Ed.) as: 'That with a view to some end; a definite course of action; business or occupation; as, professional pursuits.'"

In *Cook v. Massey, supra,* the following definition appears:

"Agricultural pursuits may therefore properly include every process and step necessary to the completion of a finished farm product."

Hay, as generally understood, becomes a finished farm product when matured, cut, cured, gathered and stacked or housed. Nothing more need necessarily be done to such crop for its consumption as hay. Other farm products, such as grains or cereals, wheat, oats, barley, etc., are not ordinarily completed until something further is done after gathering the crop, and such crop ordinarily becomes a finished farm product when matured, gathered, *threshed* and placed in bins or sacks. When cereals are ground into meal or flour or other milled products they become manufactured products. The grinding of hay subsequent to its completion as a finished farm product, may or may not be an agricultural pursuit, depending upon the facts. In *Maryland Casualty Co. v. Dobbs,* (Tex. Civ. App.) 70 S. W. (2d) 751, in the course of the opinion it was said:

"Appellee was in the employ of Hall-Prather Company, which was engaged in the business of spraying citrus trees for certain compensation. Appellee, while spraying a certain

citrus orchard, accidentally got some of the spraying liquid in his eyes which injured them, and he filed a claim with the Industrial Accident Board and obtained the results hereinbefore stated. (Judgment for compensation.)

"Appellee was not employed by any one except the company for which he was working and had no connection whatever with the farming or orchard business. He was not a domestic servant, farm laborer, or ranch laborer, and was not engaged in agricultural or horticultural pursuits. He did not become transformed into a farm laborer, by working for a firm which had no connection with a citrus farm, except to apply to them a certain mixture for the destruction of insects. The firm for which he was working was not engaged in agricultural or horticultural pursuits."

In the instant case appellant was not a farmer, he was not engaged as a farm laborer. He was employed by no one except respondent, who was commercially engaged in grinding hay, moving his machine from farm to farm, grinding for others at a fixed price per ton. Respondent had no connection with the farm or farms on which he ground hay, was not a farmer and was not engaged in an agricultural pursuit. In *Hahn v. Grimm,* 101 Ind. App. 74, 198 N. E. 93, an employee was hired to operate a corn shredder owned by a farmer and used by him in the business of shredding corn for others. The court held the injured employee was not a farm or agricultural employee, within the meaning of the compensation law, saying in the opinion:

"The mere fact that appellee's chief occupation was farming, and that he intended to shred his own corn on the day appellant was injured, or that the shredding of corn may be properly considered as the doing of agricultural labor, is not controlling. As heretofore stated, there is no evidence that appellant had, prior to his injury, been employed to perform general farm work, but to the contrary the evidence conclusively proves that he was employed as a corn-shredder hand, his employment requiring of him that he go from farm to farm during the time his employer was engaged in the corn-shredding business, and to feed and keep in working condition the machine used by his employer in the transaction of such business."

"The employer was a farmer and his principal business was the operation of a dairy farm. Claimant worked on this farm for him. However, the employer also owned and operated a power mill for the grinding of grain, for which services he was paid by a considerable number of customers. Claimant was injured while operating this power mill grinding grist for one of these paying customers. The Industrial Board has found that the employer conducted this milling as a separate business, for pecuniary gain, and not incidental to his farm operations. The evidence amply sustains this finding. Award affirmed. . . . . " (*Hamilla v. Gade,* 252 App. Div. 712, 298 N. Y. Supp. 809.)

▮ *Peterson v. Farmers' State Bank of Eyota,* 180 Minn. 40, 230 N. W. 124, illustrates the rule that the occupation or pursuit as a whole is the controlling factor, in determining whether an employee is engaged as a farm laborer or in an agricultural pursuit, rather than the immediate task being performed or the place of performance of such task:

"A workman is not a farm laborer simply because at the moment he is doing work on a farm; nor because the task on which he is engaged happens to be what is ordinary considered farm labor. The employee of an implement dealer does not become a farm laborer while engaged in correcting the behaviour of a self-binder in the grain field of the owner, a farmer and customer of the dealer. Nor would the employee of a well digger become a farm laborer while stabling horses used on the drilling outfit. But a farmer's hired man would not cease to be a farm laborer while adjusting harvesting machinery or stabling the horses of a contractor drilling a well on the place . . . . Neither the pending task nor the place where it is being performed is the test. · The whole character of the employment must be looked to to determine whether he is a farm laborer."

As was said in *Roush v. Heffelbower,* 225 Mich. 664, 196 N. W. 185, 35 A. L. R. 196:

"In holding that under the circumstances of this case the plaintiff was not a farm laborer within the meaning of our statute, we do not mean to be understood as saying that he would not have been a farm laborer if he had been employed to assist in the operation of this machine in husking the

defendant's corn on his own farm. Nor do we wish it understood that the ruling applies where the machine is owned by farmers on the co-operative plan; that is, where it is owned by a group of farmers for the purpose of husking their own corn. The extent of our holding is that one is not a farm laborer within the meaning of our statute when in the employ of a man who travels about from farm to farm with a corn husking machine, engaged in the commercial business of husking corn for a stated compensation.''

 *Dorrell v. Norida Land & Timber Co., supra,* supports the rule that it is the whole character of the employment, rather than merely the pending task or the place of performance, which must be looked to in order to determine whether the employee is engaged in an agricultural pursuit. The kind of work ordinarily done on a farm is common knowledge. In the instant case respondent owned special equipment for grinding hay, not commonly used by farmers. The evidence shows that there were but two hay cutters in the community, and but a limited quantity of hay ground, and that commercially in the greater part. It had been respondent's custom from year to year to go about from farm to farm grinding hay at a contract price. Neither respondent, nor appellant, employed by him to assist in such business, were engaged in farming or in the performance of farm laborer as generally understood. They were engaged in a special work, not ordinarily done by farmers,—a business or industrial pursuit in and of itself, entirely separate and apart from farming and not an agricultural pursuit within the meaning of section 43–904, I. C. A.

The order of the Industrial Accident Board, denying an award of compensation is reversed and the cause remanded with instructions to enter an award in favor of appellant.

Ailshie and Givens, JJ., concur.

Morgan, J., deeming himself disqualified did not sit at the hearing nor participate in the opinion.